UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
J.R., ET AL.,

                          Plaintiffs,

        - against -

NEW YORK CITY DEPARTMENT OF EDUCATION
and HILLSIDE FAMILY OF AGENCIES,

                          Defendants.
------------------------------------------------------x

MEMORANDUM AND ORDER

14 Civ. 0392 (ILG) (RML)

GLASSER, Senior United States District Judge:

Plaintiffs Courtney and Janice Richards, individually and on behalf of their son,

J.R.,[1] bring this action against the New York City Department of Education ("DOE") and

Hillside Family of Agencies ("Hillside"; and together with the DOE, "Defendants"),

alleging discrimination and retaliation claims pursuant to 42 U.S.C. §§ 1983 and 1988;

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.;

Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; Title II of

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Title IX of the

Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq.; and New York law.

The DOE moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure, to dismiss the Amended Complaint. Dkt. No. 22. Hillside moves for

judgment on the pleadings, pursuant to Rule 12(c), or, in the alternative, for summary

judgment.[2] Dkt. No. 27. For the following reasons, Defendants' motions are GRANTED

in part and DENIED in part.

---

[1] As a minor, J.R. lacks capacity to sue on his own behalf, but may be represented by his parents. See Fed. R. Civ. P. 17(c); Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009).

[2] Because Hillside has presented no matters outside of the pleadings in support of its 12(c) motion, the Court will not convert it into a motion for summary judgment. See Fed. R. Civ. P. 12(d).

# BACKGROUND

The following facts are taken from the Amended Complaint, which is presumed true for purposes of this motion. J.R. is an African-American male who was born in 1996. Am. Compl. ¶ 18. He suffers from major depressive disorder, panic disorder with agoraphobia, and borderline personality disorder. Id. ¶¶ 8, 18. Plaintiffs allege that throughout the 2010-2014 school years, students and staff at schools run by Defendants harassed J.R. based on his gender, race, and disability, and seek $10 million in compensatory and punitive[3] damages. Id. ¶ 2.

## I. Harassment at DOE Schools

J.R. entered the 8th grade at I.S. 208 in Bellerose, New York in September, 2010. Id. ¶¶ 21-22. While in school, he was on more than one occasion bullied and harassed by other students because of his perceived femininity and speech, being regularly slapped in the face and in one instance, having his pants pulled down. Id. ¶¶ 29-32. That behavior, it is alleged, occurred in the classroom of a teacher, Mr. Dibs,[4] and in the presence of other DOE employees. Id. ¶¶ 24-29, 38-39. In or around December of that year, J.R. complained to his parents that he was depressed on account of the bullying. Id. ¶ 40. At that time too, a suicide note he wrote was found by a DOE employee and he was hospitalized with a diagnosis of depression. Id. ¶ 41, 45. Upon his discharge from the hospital, he was placed on home instruction by the DOE through the end of the 8th grade. Id. ¶ 48.

In September 2011, J.R. entered the 9th grade at Queens High School for Science and Teaching. Id. ¶ 50. He was bullied there as well by students who called him

---

[3] Plaintiffs withdrew their request for punitive damages against the DOE. See Opp. at 58.

[4] Plaintiffs refer to this employee elsewhere in the Amended Complaint as "Mr. Gibbs." Am. Compl. ¶ 201.

"faggot" and "nigger" and avoided him because of his threatened suicide hospitalization. Id. ¶¶ 52-58; 62; 64; 70; 72. That disparagement and harassment, it is alleged, was in the presence of DOE employees who did nothing to intervene. Id. ¶ 53. He was hospitalized again between October 25 and November 29, 2011 after being found by a DOE employee to be cutting himself. Id. ¶ 81. Upon discharge from the hospital, his doctors recommended that he be placed on home instruction through the end of the 9th grade, which the DOE did not do. Id. ¶ 84.

On January 23, 2012, J.R. was placed by the DOE in the Queens Children's Psychiatric Center ("QCPC"). Id. ¶ 87. Two days later, on January 25, the DOE was asked to refer J.R. to the Committee on Special Education ("CSE")[5] by a letter from Dr. Scott Weisner[6] to determine whether he was eligible for special education services. Id. ¶ 88. The DOE did not make that referral at that time. While at the QCPC, it is alleged that J.R. was physically attacked and flagrantly harassed because of his perceived homosexuality, all in the presence of DOE employees who did nothing to intervene. Id. ¶¶ 99-105.

The bullying was not confined to the school proper, but was consistently endured by J.R. on the bus that transported him to and from school, which as before, was alleged to be in the presence of DOE employees who did nothing to intervene. Id. ¶¶ 90-95; 98. Plaintiffs requested the QCPC principal to transfer J.R. to another bus on which he would not be bullied. Id. ¶ 106. The principal referred them to the DOE's Pupil

---

[5] The Committee on Special Education is a team consisting of the student's parents, teachers, representatives of the local educational agency and, where appropriate, the student, which is responsible for developing an individualized education program ("IEP") for the student. See 20 U.S.C. § 1414(d); N.Y. Educ. Law. § 4402(1).

[6] The Amended Complaint does not identify Weisner as a DOE employee.

Transportation Department, which did not transfer him.  Id.  Plaintiffs allege vaguely that their requests made DOE employees "standoff-ish."  Id. ¶ 107.  The principal told Plaintiffs that because of the school's violent student population, J.R. would continue to be bullied.  Id. ¶ 109.  The school had no plan for alleviating that condition.  Id.

J.R.'s depression worsened as the bullying continued.  Id. ¶ 112.  On April 23, 2012, he was suspended for five days for bringing a knife to school and during the suspension hearing that followed on May 10, 2012, he was referred by a DOE hearing officer to the CSE for the first time.  Id. ¶¶ 113-14.

## II.  Harassment at Hillside Children's Center

The CSE held its first meeting for J.R. on September 7, 2012, at which an Individualized Education Program ("IEP") was drafted for him and he was placed at Hillside Children's Center ("HCC") in Romulus, New York for the 2012-2013 school year.  Id. ¶ 19.  HCC is owned and operated by Defendant Hillside, a private corporation.  Id. ¶¶ 16-17; 124.  While at HCC, J.R. was similarly harassed, denigrated, and physically abused because of his race, depression, perceived homosexuality, and feminine mannerisms.  Id. ¶¶ 130; 132-34; 144.  Notwithstanding Plaintiffs' complaints to Hillside and DOE employees, they did nothing to intervene.  Id. ¶¶ 135; 141.

At some point during the 2012-2013 school year, Hillside determined that HCC was not appropriate for J.R. and recommended to the DOE a "more therapeutic" school for him.  Id. ¶ 142.  This recommendation was not followed, and the DOE continued J.R. at HCC for the 2013-2014 school year, during which the bullying persisted.  Id. ¶¶ 143-44.  During a CSE meeting on October 4, 2013, Plaintiffs allegedly were told to find a new school for J.R. themselves.  Id. ¶ 146.

## III.  Impartial Hearing

On November 15, 2013, Plaintiffs filed with the DOE a request for an impartial hearing and a complaint alleging that the DOE failed to provide J.R. with a "free appropriate public education" for the 2010-2013 school years, in violation of the IDEA. Id. ¶¶ 20; 147. On January 13, 2014, an Impartial Hearing Officer issued a decision in favor of Plaintiffs requiring, *inter alia*, the DOE to issue a "Nickerson Letter"[7] authorizing J.R.'s placement at an approved private school for special education at public expense. Id. ¶¶ 20; 148. The DOE did not appeal that decision.

On January 19, 2014, Plaintiffs initiated this lawsuit. Dkt. No. 1. On April 3, 2014, Hillside filed its Answer and cross-claim against the DOE for indemnification or contribution. Dkt. No. 11. On April 22, 2014, J.R. began attending the Summit School— a private school—at the DOE's expense. Am. Compl. ¶ 150. On May 12, 2014, Plaintiffs amended their complaint to reflect J.R.'s transfer from HCC to the Summit School. Dkt. No. 15. On May 27, 2014, Hillside filed its Answer to the Amended Complaint and reasserted its cross-claim against the DOE. Dkt. No. 18. The DOE filed its motion to dismiss on August 1, 2014, and Plaintiffs opposed this motion on October 3, 2014. Dkt. Nos. 22, 29. The DOE replied on October 14, 2014. Dkt. No. 34. Hillside filed its motion for judgment on the pleadings on October 2, 2014, and Plaintiffs opposed Hillside's motion on November 3, 2014. Dkt Nos. 27, 35. Hillside replied in support of its motion on November 24, 2014. Dkt. No. 36.

## LEGAL STANDARDS

### I.   Rule 12(b)(1)

---

[7] A Nickerson Letter authorizes a parent to place a child with a disability in a State-approved private school for special education at public expense if such a school is available that can meet the child's needs. See Jennifer D. ex rel. Travis D. v. N.Y.C. Dep't of Educ., 550 F. Supp. 2d 420, 426 (S.D.N.Y. 2008).

To defeat a Rule 12(b)(1) motion to dismiss, plaintiffs "bear[ ] the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  In deciding that motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff[s]."  Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (quotation omitted).

## II.  Rules 12(b)(6) and 12(c)

To survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although detailed factual allegations are not necessary, mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice.  Id. (internal quotations and citations omitted).  This Court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011).  The standard for granting motions pursuant to Rules 12(c) and 12(b)(6) is identical and will be applied accordingly.  See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

## DISCUSSION

The federal and state law claims asserted against the DOE and Hillside are bottomed upon similar allegations of bullying endured by J.R.  Hillside joins in the DOE's motion to dismiss as to those claims.  For clarity, the claims asserted against Defendants are outlined below:

I.      ADA and Section 504 Claims Against DOE and Hillside

      a.   Discrimination Against DOE and Hillside

      b.   Retaliation Against DOE

II.     Title IX Claim Against DOE and Hillside

III.    Section 1983

      a.   IDEA Claim Against DOE and Hillside

      b.   Equal Protection Claim Against DOE and Hillside

      c.   Fourth Amendment/Due Process Claim Against DOE

      d.   First Amendment/Retaliation Claim Against DOE

      e.   Municipal Liability Against DOE and Hillside

IV.     State Law Claims Against DOE and Hillside

## I.      __ADA and Section 504 Claims Against DOE and Hillside__[8]

Plaintiffs assert disability discrimination claims pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. In nearly identical language, Section 504 prohibits disability discrimination "under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a). Plaintiffs have alleged that J.R. suffers from depression caused by discrimination-based harassment for which they claim Defendants bear responsibility in accordance with the

---

[8] Defendants argue that the ADA and Section 504 claims are subject to the same exhaustion requirements as Plaintiffs' IDEA claim and must be dismissed for failure to exhaust administrative remedies.  The Court need not address this argument because as discussed infra, Plaintiffs have not failed to exhaust their administrative remedies.

relevant statutes, Section 504 and the ADA, the violation of which is analyzed

identically.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

### a. Standing?

As an initial matter, Defendants contend that the Richards lack standing to sue

under Section 504 and the ADA on their own behalf for injuries related to J.R.'s

education.  Defendants provide no relevant authority to support this position, which is

meritless.  Although the Second Circuit has not yet addressed this issue, district courts

in this Circuit have held that parents possess "a particular and personal interest in

preventing discrimination against [their disabled] child" and thus have standing to

assert claims for violations related to their child's education.  See A.M. ex rel. J.M. v.

N.Y.C. Dept. of Educ., 840 F. Supp. 2d 660, 675 (E.D.N.Y. 2012); B.D.S. v. Southold

Union Free Sch. Dist., Nos. CV-08-1319, CV-08-1864, 2009 WL 1875942, at *14-15

(E.D.N.Y. June 24, 2009).[9]

### b. Discrimination against DOE and Hillside

To effectively plead a disability discrimination claim under Section 504 or the

ADA, Plaintiffs must allege that (1) J.R. is a qualified individual with a disability;[10] (2)

Defendants are subject to Section 504 or the ADA; (3) J.R. suffered discrimination by

harassment because of his disability; (4) the harassment was so severe, pervasive and

objectively offensive that J.R. was effectively denied equal access to an educational

---

[9] Defendants argue that the applicable statute of limitations bars all federal claims asserted individually by the Richards for events which occurred before January 19, 2011 at I.S. 208 (three years prior to the filing of the Complaint).  See Pearl v. City of Long Beach, 296 F.3d 76, 79-80 (2d Cir. 2002) (citing N.Y. C.P.L.R. § 214(5)).  This assertion, while correct, has no effect on the claims brought by the Richards on behalf of J.R.  Defendants concede his claims are not barred by the statute of limitations, which was tolled while he was a minor.  See DOE Reply at 22.

[10] Plaintiffs allege that J.R. is a "qualified individual with a disability" under the statutes.  Id. ¶¶ 8; 18.

opportunity;[11] and (5) Defendants were "deliberately indifferent" to the discriminatory harassment. See Preston, 876 F. Supp. 2d at 241-42.

Plaintiffs have not alleged that Hillside is subject to Title II of the ADA, which applies only to a "public entity," defined as "any department, agency, special purpose district, or other instrumentality of a State . . . ." 42 U.S.C. § 12131(1)(B). Thus, the ADA discrimination claim against it is dismissed.[12] Section 504, however, applies to Hillside as an entity which receives "[f]ederal financial assistance." See 29 U.S.C. § 794 (a).

Defendants contend that Plaintiffs fail to allege the prerequisite standard that the alleged harassment was sufficiently "severe and pervasive." The facts alleged in the Amended Complaint and outlined above, which are presumed to be true, plainly satisfy that prerequisite. Plaintiffs have also alleged facts supporting a plausible inference that the Hillside and DOE employees were "deliberately indifferent," meaning that their response to known instances of bullying was "clearly unreasonable." See K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F. Supp. 2d 343, 359 (S.D.N.Y. 2005); Am. Compl. ¶¶ 182-83. For example, in response to complaints about the harassment endured by J.R. on the bus, the QCPC principal did not intervene; instead, she told Plaintiffs that the bullying was likely to continue given the violent nature of the student body. Id. ¶ 109. Although the "deliberate indifference" standard does not require that teachers and school administrators successfully prevent or eradicate all bullying behavior, surely some effort to discourage that conduct and announce its unacceptability is required. Accepting the facts alleged as true, the Court finds that the

---

[11] Courts in this Circuit have applied the "severe and pervasive" standard from Title IX cases to evaluate disability harassment claims under the ADA and Section 504. See K.M., 381 F. Supp. 2d at 360.

[12] Although Plaintiffs refer to Title III in their Opposition, the Amended Complaint does not assert a claim pursuant to this section, and they cannot amend their pleading through their Opposition papers. See Hanley v. Nassau Health Care Corp., No. 10-CV-3884, 2013 WL 364375, at *3 (E.D.N.Y. July 3, 2013).

DOE and Hillside employees' alleged complete failure to address the bullying was "clearly unreasonable" and tantamount to deliberate indifference. Thus, the Court denies (1) the DOE's motion to dismiss the ADA and Section 504 discrimination claims; and (2) Hillside's motion to dismiss the Section 504 discrimination claim.

### c. Retaliation against DOE

Plaintiffs allege that after they complained about the bullying incidents on the bus, DOE employees became "standoff-ish" and failed to adequately investigate their complaints, which they characterize as "retaliation" in violation of the ADA and Section 504. The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]. . . ." 42 U.S.C. § 12203(a). Section 504 contains a similar provision. See 29 U.S.C. § 794(d). To successfully plead a retaliation claim under these statutes, Plaintiffs must allege: (1) they were engaged in a protected activity, (2) the DOE was aware of this activity, (3) the DOE took an adverse action against them, and (4) a causal connection between the protected activity and the adverse action. See Weixel v. N.Y.C. Bd. of Educ., 287 F.3d 138, 148-49 (2d Cir. 2002).

Advocacy on behalf of a disabled student is "protected activity" for purposes of Section 504 and the ADA. See Stahura-Uhl v. Iroquois Cent. Sch. Dist., 836 F. Supp. 2d 132, 143-44 (E.D.N.Y. 2011). Plaintiffs assert that their efforts to alleviate the bullying of their son was protected activity. The Court recognizes that the DOE's alleged inaction in response to these efforts could be construed as action, in that it effectively encouraged the harassment to continue. The retaliation claims fail, however, because the alleged misconduct was not sufficiently adverse, that is, "harmful to the point that it could well dissuade an individual of ordinary firmness from engaging in protected activity." See M.A. v. New York Dep't of Educ., 1 F. Supp. 3d 125, 149-50 (S.D.N.Y. 2014) (internal

quotations and citations omitted).  As the record makes abundantly clear, Plaintiffs were not deterred from continuing to press their claim for relief from the DOE.  The retaliation claims are therefore dismissed.

## II.  Title IX Claim Against DOE and Hillside

Title IX sets forth that "no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  20 U.S.C. 1681(a).  The prerequisites of a claim under Title IX are precisely the same as those for the Section 504 and ADA discrimination claims discussed above, with the only distinction being the basis upon which the harassment occurs.[13]

### a.  Gender harassment

Although Title IX does not protect against bullying based solely on homosexuality, the Supreme Court has held that harassment based on aversion to given gender preferences can support a Title VII claim, and district courts in this Circuit have extended this holding to Title IX claims.  See Price Waterhouse v. Hopkins, 490 U.S. 228, 251-52 (1989) superseded by statute on other grounds as stated in Burrage v. United States, 571 U.S. --- (2014); Pratt v. Indian River Cent. Sch. Dist., 803 F. Supp. 2d 135, 151-52 (N.D.N.Y. 2011).  For example, in Pratt, a male student was harassed because aspects of his "expressive gestures and manner of speaking were of a nature stereotypically associated with females" and students repeatedly called him names like "sissy" and "girl."  803 F. Supp. 2d at 152.  The court held that the allegations "plausibly suggest[ed] that [he] was harassed and discriminated against based on his sex, including

---

[13] Title IX also requires that the defendant have actual notice of the gender-based discrimination.  The Court addresses this in the context of the DOE and Hillside's municipal liability pursuant to Monell.

. . . perceived nonconformity to sexist stereotypes" and denied the motion to dismiss the Title IX claim. Id.

Pratt is precisely applicable here. Plaintiffs' Title IX claim is bottomed upon allegations that students bullied J.R. because he did not meet their stereotyped expectations of how a boy should behave. The Court can reasonably infer that students bullied and harassed J.R. because of their manifested revulsion of his effeminate mannerisms and way of speaking, which is stereotypically gender based. Thus, the Court finds that the alleged bullying based on J.R.'s feminine mannerisms supports the Title IX claim.

### b. Deliberate indifference

Pervasive harassment must be "sufficiently continuous and concerted" and "more than episodic." Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003) (internal citations omitted). The allegations of repeated and unwanted physical contact by other students, such as pulling down J.R.'s pants and attempting to kiss him, support a plausible inference of "severe and pervasive" harassment. See Am. Compl. ¶¶ 30-31; 99-103. As discussed supra, Plaintiffs have alleged that the DOE and Hillside employees were deliberately indifferent to this persistent physical and verbal badgering. Accordingly, Defendants' motions to dismiss the Title IX claim are denied.

## III.    Section 1983 Claims

Plaintiffs assert Section 1983 claims against both Defendants for violations of the IDEA and Equal Protection Clause, and against the DOE only for violations of the First and Fourth Amendments and the Due Process Clause. "Section 1983 does not create any federally protected right, but simply provides a mechanism to enforce federal rights established elsewhere." Velasquez v. City of New York, No. 12-CV-4689, 2012 WL

5879484, at *2 (E.D.N.Y. Nov. 21, 2012) (internal citation omitted).  To maintain a Section 1983 claim, Plaintiffs must allege that the challenged conduct was committed by a person acting under color of state law and deprived them of "rights, privileges or immunities secured by the Constitution or laws of the United States."  Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).

### a. Under color of state law?

There is no question that as a municipal entity, the DOE is considered a "person acting under color of state law."  See Fierro v. N.Y.C. Dep't of Educ., 994 F. Supp. 2d 581, 588 (S.D.N.Y. 2014).  A private entity such as Hillside, however, is generally beyond the reach of Section 1983, unless its alleged misconduct is deemed to be "fairly attributable to the State."  See Rendell-Baker v. Kohn, 457 U.S. 830, 838-43 (1982). Plaintiffs argue that Hillside acted "under color of state law" because it received public funding for J.R.'s tuition and fulfilled the DOE's statutory obligation to provide him with a free appropriate public education.  These two factors alone, however, do not make Hillside's conduct "fairly attributable to the State."  First, Hillside's performance of a function which serves the public does not render it a state actor.  Rendell-Baker, 457 U.S. at 842.  Rather, the function must be one that is "*traditionally exclusively* reserved to the State."  Jackson v. Met. Edison Co., 419 U.S. 345, 352 (1974) (emphasis added). The Supreme Court has held that education is not such an exclusive public function. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978); Rendell-Baker, 457 U.S. at 842.

Furthermore, "[e]xtensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor."  Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996).  To deem even a heavily-regulated private entity a state actor, Plaintiffs must allege that the State "exerted its coercive power over, or provided

significant encouragement to" it.  See id.  This fact-specific determination "requires thorough development and analysis of the facts of the case."  Meadows v. City of New York, No. 10-CV-286, 2011 WL 864832, at *5 (E.D.N.Y. Mar. 11, 2011).  Plaintiffs allege that the DOE overrode Hillside's determination that HCC was not an appropriate school for J.R. and continued him there for a second year.  At this stage of the litigation, Plaintiffs have alleged sufficient facts to support an inference that the DOE "exerted its coercive power over, or provided significant encouragement" to Hillside with respect to at least one key decision regarding J.R.'s education.  Accepting the facts alleged as true, the Court finds that Plaintiffs have stated a plausible claim that Hillside functioned as a state actor and can be held liable pursuant to Section 1983.

### b.  IDEA against DOE and Hillside

The IDEA establishes a comprehensive program for providing federal funds to assist the States in educating disabled children.  In exchange for federal assistance under the IDEA, the recipient State is required to ensure that disabled students receive a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. §§ 1400(d); 1412(a).  The Supreme Court has interpreted the "free appropriate public education" standard to require "personalized instruction with sufficient support services to permit the [disabled student] to benefit educationally from that instruction."  Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 203-04 (1982).  A school's failure to prevent the bullying of a disabled student may support a finding that it deprived the student of a "free appropriate public education" in violation of the IDEA.  See T.K. v. N.Y.C. Dep't of Educ., 779 F. Supp. 2d 289, 311-12 (E.D.N.Y. 2011).

### 1.  Exhaustion

14

Defendants argue that the Court lacks subject matter jurisdiction over the IDEA claim because Plaintiffs did not appeal the Impartial Hearing Officer's ("IHO") decision discussed above and therefore have not exhausted their administrative remedies.  <u>See</u> 20 U.S.C. § 1415(i)(2)(A).  Under the IDEA, parents are "entitled to request a due process hearing . . . to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'"  <u>Cave v. E. Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)).  New York has a two-tiered administrative review process for such grievances, in which parents must first request an impartial due process hearing before an IHO.  <u>See</u> N.Y. Educ. Law § 4404.  Any aggrieved party may then appeal the IHO's decision to a State Review Officer within the New York State Department of Education.  <u>See</u> 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404.

District courts in this Circuit have recognized that prevailing parties in an impartial due process hearing are not aggrieved parties and thus are not required to appeal a favorable decision to exhaust their administrative remedies.  <u>See</u> <u>R.B. ex rel. L.B. v. Bd. of Educ. of City of New York</u>, 99 F. Supp. 2d 411, 415 (S.D.N.Y. 2000); <u>S.J.B. ex rel. Berkhout v. N.Y.C. Dep't of Educ.</u>, No. 03 Civ. 6653, 2004 WL 1586500, at *3 (S.D.N.Y. July 14, 2004).  Therefore, Plaintiffs' failure to appeal the IHO's favorable decision does not deprive this Court of subject matter jurisdiction over the IDEA claim.

### 2.    <u>Damages</u>

Plaintiffs seek damages for their emotional pain and suffering and that of their son, but "affirmatively state that they are not seeking reimbursement for any expenses

associated with educating J.R." See Opp. at 36.[14]  Monetary damages are not recoverable for violations of the IDEA, but district courts in this Circuit have held that plaintiffs may seek such relief under Section 1983.  See R.B., 99 F. Supp. 2d at 418; M.H. v. Bristol Bd. of Educ., 169 F. Supp. 2d 21, 29-30 (D. Conn. 2001).  To plead a Section 1983 claim for IDEA violations, Plaintiffs must allege that Defendants acted with "deliberate indifference" toward the disability-based bullying.  T.K., 779 F. Supp. 2d at 315-16.  As discussed supra, Plaintiffs have.  Thus, the Court denies Defendants' motions to dismiss the Section 1983 claim for IDEA violations.

3.      Attorneys' Fees

As prevailing parties in the impartial due process hearing, Plaintiffs are entitled to attorneys' fees related to the hearing, pursuant to the IDEA, but seek them in the Amended Complaint under Section 1988 only.  See Vultaggio ex rel. Vultaggio v. Bd. of Educ., 343 F.3d 598, 601 (2d Cir. 2003) (citing 20 U.S.C. § 1415(i)(3)(B)); compare Opp. at 36, with Am. Compl. ¶¶ 224-26.  Although Plaintiffs have not moved for fees pursuant to the IDEA, the Court grants them leave to amend their Complaint to do so sua sponte. See Steger v. Delta Airlines, Inc., 382 F. Supp. 2d 382, 387 (E.D.N.Y. 2005).

### c.  Equal Protection against DOE and Hillside

Defendants can be liable for a violation of the Equal Protection Clause pursuant to Section 1983 on the basis of their deliberate indifference to racial or gender-based

---

[14] Defendants argue that the Richards lack standing to assert an IDEA claim for injuries related to J.R.'s education.  The Supreme Court has held that parents have standing to assert IDEA claims on their own behalf based upon the denial of a "free appropriate public education" for their children.  Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 533-35 (2007).

bullying.  See Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 140-41 (2d Cir. 1999).[15]

J.R. suffered from persistent bullying based on his race and gender, and the Court has

already determined that Plaintiffs' allegations demonstrate the deliberate indifference of

the DOE and Hillside employees.  Therefore, it finds that Plaintiffs have stated an equal

protection claim against Defendants.

### d.  Fourth Amendment/Due Process against DOE

Plaintiffs allege that the DOE violated J.R.'s rights under the Fourth Amendment

and Due Process Clause of the Fourteenth Amendment by placing him at QCPC without

parental consent or an IEP.  The DOE's placement decision did not implicate J.R.'s

rights under the Fourth Amendment or the Due Process Clause, and the Court finds

these claims to be meritless and dismisses them.

### e.  First Amendment/Retaliation against DOE

Plaintiffs assert that "J.R. was exercising his protected First Amendment interest

in seeking redress for wrongs by reporting incidents of harassment, bullying and

discrimination to the Defendant DOE employees" and that the "DOE took adverse

action against J.R. in retaliation for making such reports."  See Opp. at 46.  To plead a

claim for retaliation in violation of J.R.'s First Amendment rights, Plaintiffs must allege:

"(1) [J.R.] has a right protected by the First Amendment; (2) [the DOE's] actions were

motivated or substantially caused by [his] exercise of that right; and (3) [the DOE's]

actions effectively chilled the exercise of [J.R.'s] First Amendment right."  See Curley v.

Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  Plaintiffs' First Amendment claim

fails because they have not alleged "that the defendant's actions had some actual, non-

---

[15] Defendants incorrectly assert that Plaintiffs must allege that the harassment was "severe, pervasive, and objectively offensive."  The Second Circuit has "specifically declined" to decide whether the severity requirement from Title IX applies to equal protection claims.  See DiStiso, 691 F.3d at 424.

speculative chilling effect." <u>Colombo v. O'Connell</u>, 310 F.3d 115, 117 (2d Cir. 2002).  As the Amended Complaint reflects, the DOE employees did not deter Plaintiffs from reporting the bullying incidents.  The First Amendment claim is dismissed.

### f. Municipal Liability against DOE and Hillside

Plaintiffs claim the DOE and Hillside are vicariously liable for the wrongful conduct (i.e., deliberate indifference) of their employees as discussed above.  <u>Monell v. Department of Social Services</u> has long ago taught that *respondeat superior* is not applicable to municipalities absent a claim that the conduct of its employees was in accordance with established municipal custom or policy or the act of a person with policymaking authority for the municipality.  436 U.S. 658, 691 (1978).

Plaintiffs first argue that the Defendants' practice of "ignoring race and/or sex peer-on-peer harassment was sufficiently widespread and pervasive so as to constitute a custom of ignoring [such harassment]."  <u>See</u> Opp. to DOE motion at 44; Opp. to Hillside motion at 28 (citing Am. Compl. ¶¶ 127, 139-41, 144, 154).  The Amended Complaint focuses solely on the bullying against J.R. and sets forth no facts to support the assertion that Defendants' conduct affected other students and was "sufficiently widespread." These "[c]onclusory allegations of municipal custom or policy will not suffice to satisfy the requirements of <u>Monell</u>."  <u>Jackson v. DeMarco</u>, No. 10-CV-5477, 2011 WL 1099487, at *4 (E.D.N.Y. Mar. 21, 2011).

The Court finds, however, that Plaintiffs have alleged a plausible claim for municipal liability based on the actions of Hillside and DOE officials with policymaking authority.  "When an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy."  <u>Nagle v. Marron</u>, 663 F.3d 100, 116 (2d Cir. 2011) (internal quotation marks omitted).  In certain

circumstances, "a public school principal may be a final policymaker where the harm that befell the plaintiff was under the principal's control." <u>T.E. v. Pine Bush Cent. Sch. Dist.</u>, No. 12-cv-2303, --- F. Supp. 3d ---, 2014 WL 5591066, at *35 (S.D.N.Y. Nov. 4, 2014). "As a practical matter, principals are the highest ranking officials in the school and thus have policymaking authority in the day-to-day operations of the school." <u>Marino v. Chester Union Free Sch. Dist.</u>, 859 F. Supp. 2d 566, 569 (S.D.N.Y. 2012).

Plaintiffs allege that they reported the bullying incidents to the QCPC principal and other unidentified DOE administrators who failed to intervene. The allegations regarding the conduct of the QCPC principal are sufficient at this stage of the litigation to state a <u>Monell</u> claim against the DOE, and further fact-finding is warranted to determine the identity and involvement of the other alleged DOE administrators who were aware of the bullying and failed to intervene. Plaintiffs' allegations also indicate that Hillside officials were aware of the bullying. Hillside determined that HCC was inappropriate to meet J.R.'s needs and recommended a "less-restrictive, more therapeutic placement" for him. Am. Compl. ¶¶ 126; 142. It is reasonable to infer that a Hillside official with policymaking authority rendered this determination and was aware of the bullying, given Plaintiffs' frequent complaints. Accordingly, Defendants' motions to dismiss the claims for municipal liability are denied.[16]

## IV. **State Law Claims**

---

[16] Plaintiffs have stated civil rights claims under Section 1983; thus, dismissal of their request for attorneys' fees pursuant to Section 1988 is premature. Defendants did not address Plaintiff's claim for punitive damages against Hillside.

Plaintiffs assert various tort claims under New York law.[17]  The applicable statute of limitations bars the state law claims against the DOE, which relate to events that occurred at DOE-run schools prior to September 2012, when J.R. began attending HCC. Plaintiffs' filed their complaint on January 19, 2014, after the one year and ninety day limitations period expired for the tort claims against the DOE.  <u>See</u> N.Y.C.P.L.R. § 217-a. Thus, the DOE's motion to dismiss the state law claims is granted.

The Court finds that the state law claims against Hillside are not time-barred because they relate to bullying incidents which occurred at HCC and within the limitations period.  Hillside presented no alternative basis for dismissing the state law claims against it, and its motion to dismiss the claims is therefore denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the DOE's motion to dismiss the claims for: (1) violations of New York state law (2) retaliation under the ADA and Section 504 and (3) violations of the First and Fourth Amendments and Due Process Clause pursuant to Section 1983.  The Court GRANTS Hillside's motion to dismiss the federal claim for disability discrimination under the ADA.  The Court DENIES Defendants' motions with respect to all other claims and grants leave for Plaintiffs to amend their Complaint within 30 days to seek attorneys' fees pursuant to the IDEA.

SO ORDERED.

Dated:  Brooklyn, New York
        August 20, 2015

---

[17] The claim pursuant to Article XI of the New York State Constitution is dismissed because Article XI does not create a private cause of action.  <u>See</u> <u>K.M.</u>, 381 F. Supp. 2d at 363.

/s/_____

I. Leo Glasser
Senior United States District Judge